**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | |
|---|---|
| **AVA MARIE YOUNG** | **CASE NO.  6:24-CV-01606** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **COMMISSIONER OF SOCIAL SECURITY** | **MAGISTRATE JUDGE DAVID J. AYO** |

**REPORT AND RECOMMENDATION**

Before the Court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the parties' briefs, and the applicable law, and for the reasons set forth below, it is recommended that the Commissioner's decision be reversed and remanded for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g).

**Administrative Proceedings**

The claimant, Ava Marie Young, exhausted her administrative remedies before filing this suit.  The claimant filed an application for a period of disability insurance benefits beginning on January 4, 2021, which was denied.  (Rec. Doc. 6-1 at pp. 74–78).  She requested reconsideration, which was also denied.  (*Id.* at pp. 89–92).  The claimant then requested a hearing before an administrative law judge ("ALJ").  (*Id.* at pp. 93–94).  A hearing was held on April 25, 2024 by telephone before an ALJ, who confirmed the claimant's agreement to appear by telephone at the start of the hearing.  (*Id.* at p. 17).  The claimant was represented at this hearing by a non-attorney representative, who also appeared by telephone.  (*Id.*).  In a decision issued June 3, 2024, the ALJ determined that:

- the claimant met the insured status requirements of the Social Security Act ("Act") through December 31, 2025.  (*Id.* at p. 19).

- The claimant had not engage in substantial gainful activity since the alleged disability onset date of January 4, 2021.  (*Id.* at p. 19).

1

- The claimant had the severe impairments of multilevel degenerative disc disease and arthropathy of the spine with report of lumbar and thoracic radiculopathy, sacroiliitis status post left sacroiliac joint fusion, and obesity.  (Rec. Doc.6-1 at p. 19).

- The claimant did not have an impairment or combination of impairments that meets or medically equals the severity of any listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (*Id.* at p. 20).

- The claimant has the residual functional capacity to perform light work except that she can stand and/or walk for a total of two hours in an eight-hour workday, can occasionally climb, stoop, kneel, crouch, and crawl, and can frequently reach, handle, and finger.  (*Id.* at pp. 20–21).

- The claimant is capable of performing past relevant work as an Accounting Clerk, both as that job is generally performed and as she actually performed it, as well as composite jobs including Receptionist, Inventory Clerk, and Purchasing Clerk, but only as she actually performed those jobs.  (*Id.* at p. 25).

- The claimant has not been under a disability as defined by the Act from January 4, 2021 through the date of the ALJ's decision.  (Id. at p. 26).

Following denial of benefits by the ALJ, the claimant requested review by the Appeals Council.  (*Id.* at pp. 175–77).  The Appeals Council found no basis for review.  (*Id.* at pp. 5–8).  Accordingly, the ALJ's decision became the final decision of the Commissioner for purposes of the Court's review.  *Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005).  The claimant now seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

### Summary of Relevant Facts

The claimant was born on March 16, 1964.  (Rec. Doc. 6-1 at p. 58).  At the time of the ALJ's decision, she was 60 years old.  (*Id.* at p. 38).  The claimant has a high school education

2

and has relevant work experience in accounts payable, purchasing, inventory, and answering phones. (*Id.* at pp. 25–26, 38–39, 197).  She alleges that she has been disabled since January 4, 2021 due to back injury, herniated disc, arthritis and bone spurs in her knees and back, degenerating disc and arthritis in her neck, her need for pain management injections in her mid- and lower back, and memory loss. (*Id.* at pp. 78, 196).

The administrative record discloses consistent treatment of lumbar and thoracic back pain from 2021 through 2024.  In March of 2021, the claimant underwent imaging of her lumbar and thoracic spine, as well as her pelvis and hips.  (*Id.* at pp. 355–56).  The lumbosacral spine series revealed normal alignment, spondylosis and small osteophyte formation, prominent degenerative facet hypertrophy, and normal, symmetrical sacroiliac joints.   The thoracic spine series revealed normal alignment and prominent lateral osteophyte formation.  The pelvis and hip series revealed no abnormality.  There was "no evidence of acute osseous injury" in any region. "Chronic disc degeneration at multiple levels" of the thoracic and lumbar spine was noted. (*Id.* at p. 355).  In May of 2021, the claimant underwent an MRI without contrast of her lumbar spine, which showed normal lumbar alignment, a 4 mm central disc protrusion at T12–L1 with mild narrowing of the ventral CSF space; a 5 mm central disc extrusion at L1–L2 without central canal stenosis or neuroforaminal narrowing and noting mild degenerative facet changes; no disc bulges at L2–S1; mild to moderate facet degeneration and mild posterolateral narrowing. (*Id.* at p. 309). In June of 2021, an MRI without contrast of the claimant's thoracic spine contrast showed mild severity multilevel spondylosis, no significant canal or neuroforaminal compromise, and incidental C3/C4 segmentation anomaly. (*Id.* at p. 307).

The claimant was treated for pain management at the Headache & Pain Center in 2021, reporting lower back pain and difficulty with routine activities such as sleeping and

wearing a bra.  She received injections which she described as reducing her pain by 80 percent.  (*Id.* at pp. 318–20).

In 2022, the claimant continued pain management care, reporting decreased pain in January following injections in December of 2021.  In early March, the claimant sought emergency care at Franklin General Hospital for back and chest pain.  She was diagnosed with acute or chronic back pain and nontraumatic back spasm, as well as pneumonia.  Percocet, Zanaflex, Acetaminophen, Sulindac, and Decadron were prescribed, and the claimant was instructed to follow up with her doctor the following day.  (*Id.* at pp. 336–49).  Later in March, the claimant returned to her pain management provider with complaints of lower left back pain, difficulty sleeping, and difficulty with housework, transfers, prolonged standing, and toileting.  An additional lumbar injection was recommended.  The claimant declined to proceed with another lumbar injection at that time.  (*Id.* at p. 314–15).  The claimant returned to her pain management provider in July, August, September, and October of 2022, reporting continued lower back pain and difficulty with routine activities.  Additional injection and radiofrequency ablation procedures were recommended.  (*Id.* at pp. 377–84).  In July, the claimant sought emergency care at Franklin Foundation Hospital for left flank pain.  She was diagnosed with a single kidney stone, prescribed medications for pain and nausea, and released with instructions to follow up with a urologist within two days.  (*Id.* at pp. 524–27). The claimant returned to the hospital for additional treatment approximately one week later, at which time migration of the kidney stone was detected.  A CT study detected "mild scoliosis and multilevel spinal degenerative changes."  (*Id.* at p. 530).  Follow-up ultrasounds in September and January of the following year revealed no cysts or stones and were otherwise unremarkable.  (*Id.* at pp. 531–32).

In October of 2022, the claimant sought pain management care from a new provider, Dr. Derek Haight.  (Rec. Doc. 6-1 at pp. 389–422).  She reported unsatisfactory improvement

after physical therapy, epidural steroid injections, trigger point injections, and radio frequency ablation under the care of her prior pain management clinic. Upon examination, Dr. Haight observed the claimant to have tenderness of the right paraspinous muscles at T9–12, a normal gait, no abnormality or malformation of the lumbar or thoracic spine, and positive for right facet loading. (*Id.* at pp. 419–21). Diagnoses of thoracic spondylosis without myelopathy or radiculopathy and chronic pain syndrome were noted. Dr. Haight recommended right medial branch blocks of T10–12 facet joints, followed by intercostal nerve block if unsuccessful. (*Id.* at p. 421).

In December of 2022, the claimant returned to Dr. Haight. Referencing an apparent test medial branch nerve block performed following her October appointment, the claimant reported greater than 80 percent pain relief lasting six or more hours and that she was "very happy with [the] results." Dr. Haight noted the intention to "place it in the same areas that we did last time since it worked very well." (*Id.* at p. 417).

In January of 2023, the claimant saw Dr. Haight and reported greater than 80 percent pain relief lasting for six or more hours following her second test nerve block. (*Id.* at p. 415). Dr. Haight recommended a nerve burning procedure, to which the claimant agreed. The claimant reported that, although the results from the second nerve block did not last as long as the first one, she was still happy with the results. (*Id.* at p. 415).

The claimant next visited Dr. Haight in March of 2023, reporting "great pain relief" from an intervening radio frequency ablation at T10–12. (*Id.* at p. 406). She reported additional pain arising from her left lower back and buttock area. Dr. Haight noted the additional diagnosis of sacroiliitis. In response, Dr. Haight recommended injection at the sacroiliac joint, to which the claimant agreed. (*Id.* at p. 408).

In May of 2023, the claimant returned to Dr. Haight and reported greater than 85 percent pain relief lasting six or more hours following a left sacroiliac joint injection. Dr.

5

Haight recommended a second diagnostic injection at this site, followed by radio frequency ablation, and discussed sacroiliac joint fusion as a future option if radio frequency ablation was unsuccessful. (Rec. Doc. 6-1 at p. 401). Dr. Haight noted that the claimant was "status post ride-sided T11–L1 facet joint RFA with good pain relief." (*Id.* at p. 404).

In June of 2023, the claimant again saw Dr. Haight and reported 85 percent pain relief lasting six or more hours following her second sacroiliac joint injection. After discussion of radio frequency ablation at this site, the claimant agreed to proceed with this treatment. (*Id.* at p. 396).

The claimant returned to Dr. Haight in August of 2023 and was noted to be "[s]tatus post left-sided SIJ RFA with some improvement in her pain." (*Id.* at p. 392). The claimant reported that "the RFA of the sacroiliac joint has helped out a little but not as much as she was hoping." The claimant declined to proceed with a sacroiliac joint fusion at that time, but was interested in moving forward with a radio frequency ablation at T11-L1 to address right-sided back pain. (*Id.* at p. 390).

The claimant underwent a left sacroiliac joint fusion, performed by Dr. Haight on December 29, 2023. (*Id.* at pp. 486–87). Following this procedure, the claimant received home health services until mid-January of 2024. (*Id.* at pp. 436–82). At the time of her discharge from home health services, she no longer required use of crutches and was using a cane to walk. The claimant reported left buttock and leg pain, as well as right rib pain. (*Id.* at p. 453).

### Standards of Review

Judicial review of the Commissioner's denial of disability benefits is limited to a determination of "whether (1) the final decision in supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence."

*Madkins v. Bisignano*, 150 F.4th 657, 662 (5th Cir. 2025) (quoting *Keel v. Saul*, 986 F.3d 551 555 (5th Cir. 2021) (quoting *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016)). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).  Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will only be found when there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames*, 707 F.2d at 164 (citations omitted).

If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. 42 U.S.C. § 405(g); *Martinez*, 64 F.3d at 173.   In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from reweighing the evidence or substituting its judgment for that of the Commissioner. *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985).  Conflicts in the evidence and credibility assessments are for the Commissioner to resolve, not the courts.  *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991); *Scott*, 770 F.2d at 485.  Four elements of proof are weighed by the court in determining whether substantial evidence supports the Commissioner's determination:  (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education, and work experience.  *Wren*, 925 F.2d at 126.

### Entitlement to Benefits

The Disability Insurance Benefit ("DIB") program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.  42 U.S.C. § 423(a); *Smith v. Berryhill*, 587 U.S. 471, 475 (2019) (citing *Bowen v. Galbreath*, 485 U.S. 74, 75 (1988)).

A person is disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A). A claimant is disabled only if his physical or mental impairment or impairments are so severe that he is unable to not only do his previous work, but cannot, considering his age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work.  42 U.S.C. § 1382c(a)(3)(B).

A sequential five-step inquiry is used to determine whether a claimant is disabled, which considers whether the claimant (1) is currently engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment enumerated in the relevant regulations; (4) is able to do the kind of work he did in the past; and (5) can perform any other work.  20 C.F.R. § 404.1520; *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018).

Before going from step three to step four, the claimant's residual functional capacity is evaluated, by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the record.  20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 404.1545(a)(1).  The claimant's residual functional capacity is used at the fourth step to determine if he can still do his past relevant work and at the fifth step to determine whether he can adjust to any other type of work.  20 C.F.R. § 404.1520(e).

The claimant bears the burden of proof on the first four steps; at the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy.  *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016); *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994). This burden may be satisfied by

reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Fraga*, 810 F.2d at 1302. If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends. 20 C.F.R. § 404.1520(a)(4); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 914 U.S. 1120 (1995) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).

## Allegations of Error

1. <u>Credibility Determination</u>

The claimant alleges that the ALJ committed legal error by failing to articulate the reasons why he found the claimant's subjective complaints of intensity, persistence, and limiting effects of her symptoms to be inconsistent with the record. (Rec. Doc. 9 at pp. 4–8; Rec. Doc. 11 at pp. 1–4). "When evaluating the credibility of a claimant's subjective allegations of pain, the ALJ must give specific reasons for his findings." *Undheim v. Barnhart*, 214 F. App'x 448, 450 (5th Cir. 2007) (citing SSR 96-7[1]; 20 C.F.R. § 404.1529(c)). While an ALJ is not required to "follow formulistic rules when articulating the reasons for his credibility determination[,]" the ALJ "must be sufficiently specific to make clear to the claimant and to any subsequent reviewers the weight the adjudicator gave to the claimant's statements and the reasons for that weight." *Id.*

In this case, the ALJ used a phrase common to such decisions, finding that

> the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely

---

[1]     SSR 96-7 was superseded by SSR 16-3p, effective March 28, 2016.

> consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(Rec. Doc. 6-1 at p. 24).

The claimant asserts that because the medical record evidence clearly supports her subjective complaints of pain and physical limitation, the ALJ erred in failing to articulate reasons for his negative credibility determination. (Rec. Doc. 9 at p. 7).

> If the uncontroverted evidence shows a basis for the claimant's complaints of pain, the ALJ's unfavorable credibility determination will not be upheld "unless the ALJ weights the objective medical evidence and assigns articulated reasons for discrediting the claimant's subjective complaints of pain."

*Wilson v. Barnhart*, 129 F. App'x 912, 914 (5th Cir. 2005) (quoting *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989)).

At the hearing, the claimant testified that she had difficulty sitting or standing for more than fifteen to twenty minutes at a time, used a cane to walk more than 100 feet, drove only short distances, lifted no more than eight or ten pounds, was limited in her ability to perform household chores such as vacuuming, mopping, and sweeping, and most often sat in a recliner and watched television at her home. (Rec. Doc. 6-1 at pp. 41–49).

The ALJ found that a March 25, 2024 physical capacities evaluation by the claimant's primary care physician, Dr. L. H. McCormick, was "unpersuasive and inconsistent." (*Id.* at p. 25). Dr. McCormick opined that the claimant could sit less than one hour and stand or walk less than one hour per day, could perform simple grasping and fine manipulation with both hands, but could not push or pull with either hand. (*Id.* at p. 619). Dr. McCormick further opined that the claimant could never lift or carry any amount of weight and could not ever climb, balance, stoop, kneel, crouch, crawl, or reach above shoulder level. (*Id.* at p. 620). He also found that the claimant should be totally restricted from unprotected heights, moving machinery, exposure to marked changes in temperature and humidity, driving automotive

10

equipment, and exposure to dust, fumes, and gases. (*Id.* at p. 620). Dr. McCormick affirmed that the claimant suffers from fatigue, which he attributed to her chronic pain and which he found to be disabling so as to prevent the claimant from even sedentary work. (*Id.* at pp. 620-21). Similarly, Dr. McCormick also opined that the claimant's pain was disabling so as to prevent her from engaging in sedentary work. (*Id.* at p. 621).

The ALJ found the April 29, 2022 consultative medical examination performed by Dr. Tosheiba Holmes to be "persuasive" and "generally consistent with her findings" as to the claimant's difficulty lifting, carrying, standing, and walking. (*Id.* at p. 25). Dr. Holmes reported that the claimant could not walk on her heels or toes, perform a tandem heel walk, or squat. Dr. Holmes further reported that the claimant had "difficulty getting up and out of the chair [and] on and off of the exam table[,]" noting knee stiffness. (*Id.* at pp. 368–69). The claimant was observed to ambulate "with difficulty, but…without an assistive device." (*Id.* at p. 369). The claimant's gait was observed as "abnormal…mildly antalgic" as to the right knee. (*Id.* at p. 369). The claimant displayed tenderness along the entire axial spine. Straight leg raises were negative as to both legs. (*Id.* at p. 370). Dr. Holmes noted weakness in the right and left arms, as well as decreased grip strength. The claimant's reflexes were observed to be abnormal as to triceps, patella, and Achilles tendons. (*Id.* at pp. 370–71). Dr. Holmes noted decreased range of motion in all extremities without joint deformity, except as to right knee, which was observed as abnormal with tenderness "to palpation medially with crepitus." (*Id.* at p. 371). Based on her examination, Dr. Holmes concluded that the claimant could stand or walk occasionally, or "very little up to 1/3 total of an 8 hour work day [sic]" and had limited ability to bend, stoop, reach, handle or grasp. Additionally, Dr. Holmes opined that the claimant "has limitations in exposure to dust, fumes or temperature changes." (*Id.* at p. 372).

11

In contrast, the ALJ found the reports of two state agency medical consultants at the initial and reconsideration levels unpersuasive. (Rec. Doc. 6-1 at p. 25). In particular, the ALJ pointed out that these consultants did not actually examine the claimant and based their opinions on only part of the medical record. The ALJ found that these consultants' opinions were inconsistent with pre- and post-report medical records indicating treatment related to the claimant's back pain. (*Id.*).

SSR 16-3p provides that an ALJ evaluating the intensity, persistence, and limiting effects of a claimant's subjective symptoms will

> examine the entire case record, including the objective medical evidence; an individual's statements [regarding] symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.

This policy interpretation further provides that an ALJ conducting such analysis will "explain which of an individual's symptoms we found consistent or inconsistent with the evidence in…her record and how our evaluation of the individual's symptoms led to our conclusions."

In this matter, the ALJ did not provide analysis of the claimant's subjective complaints regarding symptoms of her back pain. Rather, the ALJ stated, employing a ubiquitous phrase in such decisions, that

> [a]fter careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for reasons explained in this decision.

(Rec. Doc. 6-1 at p. 24). While there is no formulaic requirement for analysis that an ALJ must include in such decisions, credibility findings should be explained to permit meaningful review. *Falco v. Shalala*, 27 F.3d 160, 163–64 (5th Cir. 1994); *Abshire v. Bowen*, 848 F.2d

12

638, 642 (5th Cir. 1988). The ALJ's decision contains no discussion of the claimant's statements regarding her symptoms, nor does it identify what portions of the claimant's subjective complaints the ALJ found to be inconsistent with medical and other evidence in the record. Accordingly, the ALJ's analysis provides no basis for meaningful review.

The medical records in this matter show consistent treatment for back pain, which is generally supportive of the claimant's symptomatic complaints. The ALJ does not identify portions of these medical records which he believes undercut the claimant's subjective complaints of pain and its limiting effects. Accordingly, the ALJ's failure to provide analysis as described above constitutes error which this Court finds was prejudicial to the claimant in this matter based on the weight of evidence supportive of the claimant's allegations of disability. On this basis, the undersigned will recommend remand for further proceedings.

2. Report of Dr. Louis McCormick

Dr. McCormick, described as the claimant's primary care physician, rendered a treating source opinion, dated March 25, 2024. (Rec. Doc. 6-1 at pp. 619–21). As detailed above, in that opinion, Dr. McCormick expressed the belief that the claimant was significantly limited in her ability to work based on her inability to lift or carry any weight, as well as her inability to climb, balance, stoop, kneel, crouch, crawl, or reach above shoulder level. (*Id.* at p. 620). Additionally, Dr. McCormick opined that the claimant could stand, walk, and/or sit less than one hour each day, could not use her hands for repetitive tasks such as typing, writing, or assembly, and could not use her feet repetitively. (*Id.* at p. 619). Addressing Dr. McCormick's opinion, the ALJ found that it prescribed "extreme" and without sufficient connection to Dr. McCormick's past treatment of the claimant. (*Id.* at p. 25). The claimant alleges that the ALJ committed error in rejecting Dr. McCormick's treating source opinion as unpersuasive without providing analysis of the factors upon which a persuasiveness finding must be based. (Rec. Doc. 9 at pp. 8–10).

20 C.F.R. § 404.1520c provides that an ALJ will consider the following factors when determining what weight to give to medical opinions and prior administrative findings:

(1) Supportability.  The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)…the more persuasive the medical opinions…will be.

(2) Consistency.  The more consistent a medical opinion…is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion…will be.

(3) Relationship with the claimant.  This factor combines consideration of [length of treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and extent of the treatment relationship, and examining relationship].

(4) Specialization.  The medical opinion…of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion…of a medical source who is not a specialist in the relevant area of specialty.

(5) Other factors.  [The ALJ] will consider other factors that tend to support or contradict a medical opinion…This includes, but is not limited to, evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements. When we consider a medical source's familiarity with the other evidence in a claim, we will also consider whether new evidence we receive after the medical source made his…medical opinion…makes the medical opinion…more or less persuasive.

20 C.F.R. § 404.1520c(c).

After careful review of the ALJ's decision and the medical source opinion rendered by Dr. McCormick, the undersigned does not find that the ALJ's persuasiveness determination constituted error.  The undersigned finds that substantial evidence bearing upon the five pertinent factors above supports the ALJ's determination on this issue.  Specifically, the ALJ found that Dr. McCormick failed to offer sufficient support for the limitations he recommended in this case, noting that the opinion was contained within a "checklist-type form[.]"  (Rec. Doc. 6-1 at p. 25).  The ALJ further noted that "Dr. McCormick's findings are inconsistent with the treatment records of the pain management provider and the objective

14

testing, as well as the consultative examination conducted by Dr. Holmes." (*Id.*). This finding is amply supported by the medical records. Dr. McCormick is not a specialist and did not perform testing from which the functional limitations recommended might have been derived. Dr. McCormick's prior treatment of the claimant appears to have been in the nature of traditional primary care, relating foremost to issues such as gall stones, COVID, diabetes, and pharyngitis. (*See*, Rec. Doc. 6-1 at pp. 424–26). Dr. McCormick's medical source opinion fails to provide substantive explanation for the limitations endorsed. Additionally, these limitations are, indeed, more restrictive than those supported by the medical records of the pain management specialist or the claimant's own testimony. (*See*, *Id.* at pp. 41–49).

For these reasons, the undersigned finds that the ALJ's persuasiveness determination is supported by substantial evidence satisfying the relevant factors under 20 C.F.R. § 404.1520c(c) and did not constitute error.

## Conclusion

For the reasons discussed herein, this Court recommends that the Claimant's appeal be GRANTED, such that this matter be REVERSED and REMANDED to the Commissioner for rehearing pursuant to the fourth sentence 42 U.S.C. § 405(g). Inasmuch as the reversal and remand recommended herein falls under sentence four of 42 U.S.C. § 405(g), any judgment entered in conjunction herewith will be a "final judgment" for purposes of the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(1)(A). *See*, *Richard v. Sullivan*, 955 F.2d 354 (5th Cir. 1992); *Shalala v. Schaefer*, 509 U.S. 292 (1993).

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.

**THUS DONE** at Lafayette, Louisiana on this 25th day of March, 2026.

_____
**DAVID J. AYO**
**UNITED STATES MAGISTRATE JUDGE**

16